## DE BARY et al. v. DUNNE, Collector.

(Circuit Court, D. Oregon. October 4, 1909.)

1. INTERNAL REVENUE (§ 12*)—WHOLESALE LIQUOR DEALERS—PLACE OF SALE.

Plaintiffs, who were wholesale liquor dealers in New York City, paid the special internal revenue tax there and kept imported wines on storage with McC. & Co., at Portland, from which jobbers in that city and vicinity were supplied. Plaintiffs delivered to McC. & Co. a list of dealers to whom they were authorized to deliver wines from the stock on storage when requested to do so by such dealers, not exceeding a certain number of cases in any one month. The persons or firms on such credit list, when desiring to purchase wines of plaintiff, delivered to McC. & Co. a written order for the number of cases desired, and if the maximum limit to which the purchaser was entitled for the current month had not been exceeded McC. & Co. immediately delivered the goods without consulting plaintiffs, and reported the sale to them at New York, from whence an invoice for the goods at the current price would be shipped to the buyer and the

---

price remitted to plaintiffs in New York. There was no contract that the accredited purchasers should buy any particular quantity per month, or any at all. *Held*, that sales made under such arrangements were made in Portland, and not in New York, and that plaintiff was therefore subject to the payment of a federal wholesale liquor dealer's tax in Oregon, imposed by Rev. St. § 3244 (U. S. Comp. St. 1901, p. 2096).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 30; Dec. Dig. § 12.*]

2. SALES (§ 1*)—DEFINITION.

A "sale" is a contract by which property is transferred from the seller to the buyer for a fixed price in money paid or agreed to be paid by the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1: Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 7, pp. 6291–6306; vol. 8, p. 7793.]

Suit by Adolf De Bary and others against David M. Dunne, as Collector of Internal Revenue for the District of Oregon. Judgment for defendant.

See, also, 162 Fed. 961.

Williams, Wood & Linthicum, for plaintiffs.
John McCourt, U. S. Dist. Atty., for defendant.

BEAN, District Judge. This is a suit brought against the collector of internal revenue for the district of Oregon, to recover the amount of a special tax, paid by plaintiffs under protest, as wholesale liquor dealers in the city of Portland, for the year ending June 30, 1905. Section 3244, Rev. St. (U. S. Comp. St. 1901, p. 2096), provides:

"Special taxes are imposed as follows: * * * Wholesale liquor dealers shall pay $100.00. Every person who sells or offers for sale foreign or domestic distilled spirits or wines in quantities of not less than five wine gallons at the same time shall be regarded as a wholesale liquor dealer."

The plaintiffs are wholesale liquor dealers in the city of New York, and paid a special tax for the year ending June 30, 1905, in that city. They had no office or resident sales agent in the district of Oregon during that year, but kept a stock of imported wines on storage in the warehouse of the J. McCracken Company, at Portland, from which jobbers in the city and vicinity were supplied. The method of doing business was as follows: The plaintiffs purchased wines in France and shipped them to Portland in bond. The J. McCracken Company paid the necessary charges to take the goods out of bond and the expense of transferring them to its warehouse, which sums were returned to them by the plaintiffs. The goods, when taken to the warehouse, were placed in storage as the property of the plaintiffs, and they paid the storage thereon. The plaintiffs furnished the McCracken Company a list of persons and firms in Portland and vicinity to whom they, the McCracken Company, were authorized to deliver wines from the stock on storage, when requested to do so by such persons, not exceeding a certain number of cases in any one month. When any person or firm on this accredited list desired to purchase wines of the plaintiffs, they made out and delivered to the McCracken

Company a written order for the number of cases desired, and if the maximum limit to which such person was entitled for the current month had not been exceeded the McCracken Company immediately delivered the goods, without consulting the plaintiffs. The delivery was reported by the McCracken Company to the plaintiffs at New York, and in due course of mail the purchaser received from the plaintiffs a bill or invoice for the goods at the current market price, and the money in payment therefor was remitted by such customer direct to the plaintiffs at New York. There was no contract or agreement between the plaintiffs and any person on the accredited list by which such person was obliged to purchase from plaintiffs any particular quantity of wines per month, or to purchase wines from them at all. The list was merely authority to the McCracken Company to deliver wines on storage belonging to the plaintiffs to the persons on such accredited list.

The question for decision is whether the sale of the wines delivered by the McCracken Company to plaintiffs' customers at Portland, under the circumstances stated, took place in Portland or in New York. If in Portland, the special tax was legally and properly exacted, and plaintiffs cannot recover in this action; but if the sale was in fact, or in legal effect, made in New York, the plaintiffs are not subject to a second tax in Portland. In my opinion the transaction was clearly a sale and delivery of the goods in Portland. A sale is briefly defined as a contract by which property is transferred from the seller to the buyer for a fixed price in money, paid or agreed to be paid by the buyer. 24 Am. & Eng. Ency. 1022; 2 Bouvier, Law Dictionary, p. 943. All the essential requisites of such a transaction took place in Portland. The goods, which were the subject-matter of the contract and which were to be transferred from the seller to the buyer, were in Portland, in the possession of a warehouseman, holding them for the seller, but with authority to deliver them to the buyer. They were so delivered with the intent that the title should pass. The buyer then and there became the owner of the goods, and liable to the seller for the market value thereof in money. The fact that the warehouseman reported the delivery to the seller at New York, and the bill or invoice was there made out and forwarded to the buyer, is unimportant. That was after the delivery of the goods and title had passed, and was nothing more than a presumably convenient method of advising the buyer of the price and the manner in which he would be expected to make payment.

The case of De Bary v. Souer, 101 Fed. 425, 41 C. C. A. 417, is relied upon by plaintiffs. In that case the order for the liquors was sent by the customer to the plaintiff in New York, and there approved before the warehouseman received authority to deliver the goods to the purchaser. The transaction was therefore deemed a New York contract, and the sale held to have taken place in that city. But here no such method was pursued. The goods were in fact delivered to the purchaser, and the title passed irrevocably to him, before the plaintiffs were advised of the transaction. It may be that where an order for liquors is received by a dealer at a place where the special tax has been paid, and is there duly accepted and the purchaser so informed, and the invoice transmitted to him from such place, a subsequent delivery

of the goods from a warehouse elsewhere will not make the seller liable to a special tax at the place of delivery. In such case it may be well held that the contract is complete, and the sale in law made, at the place where the order is received and accepted. But it has been held that a liquor dealer, who receives orders at his place of business to ship liquors to another place, there to be delivered to the person ordering them upon payment of the price, is liable to the payment of a special tax at the place of delivery because the sale is actually made at such place. U. S. v. Shriver (D. C.) 23 Fed. 134; U. S. v. Cline (D. C.) 26 Fed. 515; Stevens v. Ohio (C. C.) 93 Fed. 793.

But, however that may be, the transactions involved in this action constituted sales at Portland, and plaintiffs are not entitled to recover.

Findings may be prepared in accordance with these views.