TRUAX *v.* HEARTT.

1. RECOUPMENT—BURDEN OF PROOF.
   Recoupment being an affirmative defense, the burden of proof to establish it is upon the defendant.

2. PLEADING—AFFIRMATIVE DEFENSE—NOTICE.
   A defendant cannot insist on an affirmative defense not fairly set up in his notice under the general issue.

3. CONTRACTS—BREACH—RECOUPMENT—FIRE—INSTRUCTIONS.
   Under a notice of recoupment that plaintiff had agreed to employ a night watchman in a shingle mill, and leave a boiler and engine in like good condition as when taken, except for natural wear from proper use, and that, because of plaintiff's negligence in not employing a night watchman, the engine and boiler were damaged by a fire, a charge that, if the fire was due to plaintiff's failure to employ a night watchman, defendant would be entitled to damages, was as favorable as defendant was entitled to.

4. APPEAL—QUESTIONS NOT RAISED ON TRIAL.
   A judgment will not be reversed on a point raised for the first time on motion for a new trial.

Error to Tuscola; Beach, J. Submitted November 5, 1903. (Docket No. 89.) Decided December 1, 1903.

*Assumpsit* by Lewis C. Truax against William A. Heartt for work and labor. From a judgment for plaintiff, defendant brings error. Affirmed.

*F. S. Wheat,* for appellant.

*Atwood & Pulver,* for appellee.

HOOKER, C. J. The plaintiff brought this action to recover compensation for sawing certain shingles for the defendant. The declaration was upon the common counts, and a bill of particulars was filed. Neither appears in the printed record, and no question has been raised making it

necessary. Plaintiff's claim was $108, and for this sum he was given a verdict and judgment.

A written notice of recoupment was filed with the plea of the general issue. This notice alleged that the shingles were sawed under a written contract made between the parties and set up in the notice. The substance of this agreement, so far as it is necessary to state it for an understanding of the questions before us, was as follows, namely: Defendant had some shingle stock and an engine and boiler on his property at Wahjamega. The plaintiff owned a shingle mill, which he agreed to place upon the defendant's property, and manufacture the shingle stock, in workmanlike manner, forthwith, and without delay. It was further agreed that during the prosecution of the work he should "keep employed a night watchman, to avoid accidents from fires." It was also agreed that "party of the first part is to have the use of the boiler and engine now in mill frame, or adjoining, in cutting the shingles, and agrees to leave it in like good condition when the job is completed as now, save and except natural wear from proper use."

The notice stated further that the plaintiff delayed the removal of his mill to Wahjamega, and delayed working up the timber, contrary to the terms of the contract, and that he did not employ competent men as required by the contract, and that the cutting, assorting, and packing were done "not carefully and savingly;" that, instead of restoring the engine and boiler in like good condition as when taken, save natural wear from proper use, "on or about February 1st last [1902] said engine and boiler have been unfit for use, because of the gross carelessness and negligence of the plaintiff;" and "during the prosecution of the work said plaintiff agreed to employ a night watchman, to avoid accident from fire, etc., instead of which for a part of the time only was a night watchman so employed, because of which, on or about February 1st last, a fire occurred, to the injury of this defendant;" "because of said fire, resulting from the gross carelessness and neg-

ligence of said plaintiff, a large amount of timber suitable for making shingles, as well as manufactured shingles, in and about the mill and mill premises, together with the mill frame of this defendant, was destroyed, and wholly lost to this defendant." A motion for new trial was made upon various grounds, and this was denied, and defendant has brought the cause to this court by writ of error.

It was conceded on the trial that the injury to the engine and boiler amounted to $129, that being the cost of repairs. It was contended on the motion for a new trial and upon the hearing that plaintiff was chargeable with this item under the express provisions of the contract, and that the jury should have been so directed. It was also shown that no night watchman was kept upon the premises, except that plaintiff's fireman sometimes slept there nights, and had done so regularly for a week before the fire; that, when the contract was executed, plaintiff said: "This is the kind of a night watchman I propose to have. My fireman says that he will sleep in the mill nights, in a small house near the boiler." "I said, 'That's the kind of a night watchman I propose to have,'" and that defendant made no objection. On the occasion of the fire the fireman left for supper at 25 minutes past 6, and the alarm was given about 20 minutes before 7, the same evening. Counsel claims that the failure to keep a night watchman was a breach of the contract, entitling defendant to recoup damages to the engine and boiler.

In his charge, which appears to have treated the case upon some of its points as one of negligence, the court said that the plaintiff would be entitled to a verdict for $108, unless defendant showed a right to damages, and that the "burden is upon the defendant to show, by a preponderance of the evidence, that he has sustained them." Error is assigned upon this. He left the question of damages arising from delay to the jury, and there is no occasion to discuss that subject. Referring to the fire, he said:

" The other item of claimed damages is that the mill burned.    There is no dispute here but that he owned the engine and boiler, and the claim is that, by reason of the fire, this engine and boiler were damaged.    He has put before you testimony which he claims to have been the items constituting that damage,—what it would cost to repair the engine and boiler.    It does not follow, simply because he sustained that loss, that the plaintiff is responsible for it.    But the claim is made upon the theory that the fire which caused the loss was a negligent fire.    The contract calls for a night watchman to be employed by Mr. Truax.    The claim of Mr. Truax [Heartt] is that, by reason of negligence in that respect, the fire occurred; occurred from, and can be directly traceable to, a breach of the contract in that respect,—the nonemployment of a night watchman.

" You have heard the testimony as to the time when the fire occurred, and the manner in which it occurred, so far as it is known.    I will say to you, in the first place, that a fire occurring in this way— We all know, from the character of the work, the character of the machinery, and the work being done, and all that, that there is danger attending the working of a shingle mill, and that there are probabilities of fire occurring, and, to guard against this, this clause was put in the contract.    But at the same time we know that, even with night watchmen and everything properly guarded, a fire might take place for which no one would be particularly responsible.    From the character of the business it is one of the risks, and I say to you there is not very much testimony here as to the origin of the fire; but it is your duty to pass on that question, and if the testimony, by the preponderance of the testimony, convinces you that the neglect to employ a night watchman resulted in this fire, that the fire was an act of carelessness which might have been guarded against by the employment of a night watchman, why it would be a breach of this contract, and Mr. Heartt would be entitled to recoup the damages which he sustained to this mill.    But, as I say to you, the burden was upon the defendant to trace this fire by some testimony—by some evidence—which preponderates in your mind, in favor of a theory of a negligent fire, before he can recover under that claim.    If the fire was negligent, I say to you that this would be a breach of this contract.    If the fire occurred as one of the incidents of a risky business, the plaintiff would not be chargeable with

the loss. If you find that Mr. Heartt has sustained damages under these claims, then you will compute the amount of those damages, and set it off against the claim of the plaintiff here for $108.67, and render a judgment for the plaintiff for the balance. If they exceed the claim of the plaintiff,—if those damages, in your mind, when you have settled them, exceed the claim of the plaintiff,—then you will render a verdict for the difference in favor of the defendant."

It is now claimed that this charge was erroneous in limiting the right to recover damages by what was said about negligence, and in what was said regarding plaintiff's nonliability if the fire occurred as one of the incidents of a risky business, and not from negligence in plaintiff's failure to employ a night watchman.

Circuit Court Rule No. 7 requires notice of an affirmative defense. Recoupment is such, and the learned circuit judge was clearly right in saying that the burden of proving it was upon the defendant. Again, the plaintiff was not bound to meet any affirmative defense not set up in such a way as to fairly apprise him of it. The notice in this case shows a claim, based upon a breach of contract, for damages in the manufacture of the shingles, and this was submitted to the jury. The same may be said of his failure to employ a night watchman; and the court instructed the jury that, if the fire was due to the plaintiff's negligence to employ a night watchman, defendant would be entitled to damages for injury to the engine and boiler, and this was as favorable instructions upon that subject as the defendant had a right to expect.

To the claim that the failure to restore the boiler and engine in the condition required by the contract entitled defendant to recoup damages, a sufficient answer is found in the fact that the notice contains no such claim. Moreover, the case was not tried upon such a theory, and defendant's requests contain no allusion to it. The court tried the case and charged the jury in exact accordance with the notice, and, having done so, he properly denied

the motion for new trial.    We fail to discover anything to indicate that the present claim was in any way made upon the trial.

The judgment is affirmed.

The other Justices concurred.